IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) Civil Case No.: 2:13-cv-00536-RTR |
| v. | ) |
| JOHN DOE subscriber assigned IP address 184.58.186.212, | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO QUASH SUBPOENA, MOTION FOR LEAVE TO PROCEED ANONYMOUSLY, AND MOTION TO SEAL EXHIBIT C**

### I. INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's motion because Defendant has not provided a valid reason under Fed. R. Civ. P. 45 to quash the subpoena. The Court should not be persuaded by Defendant's *ad hominem* attacks and attempts to discredit Plaintiff. Plaintiff Malibu Media, LLC has "suffered real damages as a result of illegal downloading of its movies through BitTorrent" and must obtain the identity of the anonymous online infringer in order to protect its copyrights. *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 at *8 (E.D. Pa. June 18, 2013).

District courts have consistently permitted copyright owners to identify Doe Defendants through a Rule 45 subpoena. Two Federal Circuit Courts have also held that Rule 45 subpoenas are permissible. Here a ruling to the contrary would catastrophically undermine the rights of copyright owners by denying them the tools necessary to identify online infringers. Without the ability to identify online infringers, suits cannot be brought and rights cannot be enforced. And,

1

denying a copyright owner the right to identify would be inconsistent with the express will of Congress. For these reasons, as explained more fully below, Plaintiff respectfully requests that the Court deny Defendant's motion so that it may identify the John Doe Defendant.

II. **FACTS**

### A. Plaintiff Malibu Media, LLC Faces a Serious Problem With Online Infringement Through the BitTorrent File Sharing Protocol

Just last month Plaintiff won the first ever BitTorrent copyright infringement lawsuit to go to trial. *See Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 (E.D. Pa. June 18, 2013). In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings. Importantly, Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a "copyright troll"—i.e., a non-producer who merely has acquired the right to bring lawsuits against alleged infringers. Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* Judge Baylson further recognized that "[t]he evidence that Malibu presented at trial was persuasive as to the fact that it had suffered real damages as a result of illegal downloading of its movies through BitTorrent." *Id.* at *8. Again distinguishing Plaintiff from other BitTorrent copyright infringement plaintiffs, Judge Baylson concluded by saying that Malibu's claims were supported by substantial evidence and they were accordingly, entitled to a significant award.

> I have previously noted the fact that the infringement cases brought by Malibu and other similarly situated companies have attracted a great deal of attention, not only of federal district judges but also of bloggers who assert that "copyright trolls" are using unscrupulous tactics and false accusations to collect millions of dollars from innocent and injured computer users. I do not have any opinion as to the truth of the situation as regards to other plaintiffs in other courts. But here,

2

<u>Malibu has satisfied its burden of proof with substantial evidence and deserves a large award</u>.

*Id.*

### B. The Infringer

Here, Defendant has infringed eleven (11) of Plaintiff's movies over the course of three months. *See* Complaint Exhibit B. Indeed, Defendant has illegally downloaded Plaintiff's movies consistently and habitually. *Id.* The timespan of infringing activity eliminates the possibility that the infringer is a short term guest, visitor, or other interloper. By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies. *See* Complaint ¶ 11. On May 15, 2013, Your Honor entered an order allowing Plaintiff to subpoena Defendant's Internet Service Provider to receive Defendant's identity. *See* CM/ECF 7.

Plaintiff's investigator monitors a wide variety of BitTorrent traffic. Before preparing its Complaint, Plaintiff asked its investigator to search through its database for other infringing conduct that may help identify the infringer. Plaintiff's investigator returned a long list of BitTorrent activity by Defendant's IP address. *See* Complaint Exhibit C. This activity demonstrates that a person using Defendant's Internet is a habitual BitTorrent thief. *Id.* Further, this activity helps Plaintiff determine the correct infringer. For example, Exhibit C demonstrates that Defendant is a fan of video games since he/she downloaded Guitar Hero, Guitar Hero III Legends of Rock, Call of Duty Black Ops, Grand Theft Auto: Vice City, Call of Duty 4, Bioshock Infinite, Fallout 3: Game of the Year Edition, Tomb Raider, and Halo: The Forerunner Saga. *See* Exhibit C. Indeed, at this point in time, Plaintiff has advanced its technology and strengthened its case so that it is highly likely that the infringer is either the subscriber, or someone residing in the subscriber's home who the subscriber will be able to readily identify.

3

### III. LEGAL STANDARD

Rule 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. *See Fed. R. Civ. P. 45(c)(3)(A)(i-iv)*. The Rule also provides for circumstances in which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty to incur substantial expense to travel more than 100 miles to attend a trial. *See Fed. R. Civ. P. 45(c)(3)(B)(i-iii)*. "No other grounds are listed." *Malibu Media, LLC v. John Does 1-21*, 2012 WL 3590902 (D. Colo. 2012) (denying motion to quash).

### IV. THIS COURT SHOULD NOT QUASH THE SUBPOENA

#### A. There is No Alternative Means for Plaintiff to Identify the Alleged Infringer

Defendant argues that the Court should quash the subpoena because Defendant, as the internet subscriber with the subject IP address, may not be the alleged infringer because an IP address "does not identify either the computer or its user." *Defendant's Motion*, p. 5. However, "[f]irst (and most importantly), the plain language of Rule 45 does not authorize the Court to quash a subpoena based upon alleged misidentification." *Malibu Media, LLC v. John Does 5-8*, 2013 WL 1164867 at *3 (D. Colo. Mar. 20, 2013). Defendant's argument is a denial of liability which has no bearing on a motion to quash. "[I]t is [Defendant], not Plaintiff, who bears the burden of establishing that the subpoena falls within the Rule 45 criteria for quashing a subpoena. A denial of liability is simply not among those criteria." *Malibu Media, LLC v. John Does 1-14*, 1:12-CV-263, 2013 WL 2285950 at *3 (N.D. Ind. 2013) (citation omitted). *See also Malibu Media LLC v. John Does 1-7*, 2013 WL 501445 at *2 (C.D. Ill. 2013) ("at this stage of

4

the litigation, the concern that someone else may have somehow gained access to the Doe's computer is essentially a denial of personal liability. It goes to the merits of the claim, not to the validity or enforceability of the subpoena. Raising this issue now is premature."); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 250 (N.D. Ill. 2011) ("A general denial of liability is not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit.").

Without obtaining the identifying information of the alleged infringer from his/her Internet Service Provider ("ISP") this case cannot proceed. Although it is true that the internet subscriber might not be the infringer, identifying the subscriber to whom the IP address belongs is the only possible way for Plaintiff to begin to protect its copyrights against online infringement through the BitTorrent protocol. *See Malibu Media LLC v. John Does 1-7*, 2013 WL 501445 at *2 (C.D. Ill. 2013).

> It is not always the case that the person who pays the bill for internet service is the person who used the computer at a given time. Beginning with the account holder is, however, a start, and in the circumstances presented in copyright infringement cases where the infringers' identities are hidden, <u>it is the only possible way to start</u>. The Court knows of <u>no other method for a copyright holder to begin to protect its copyright when the BitTorrent protocol is the alleged method of infringement</u>.

*Id.*

### B. Plaintiff's Subpoena Seeks Relevant Information Under Rule 26

District courts have correctly recognized that the information sought by Plaintiff in its subpoena is "highly relevant," despite the possibility that the internet subscriber might not be the alleged infringer himself or herself. *See e.g. Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 at *5 (N.D. Ill. 2013) (denying motion to quash).

> The Court agrees with Malibu. If the Court were to quash the subpoena as the Putative Defendants urge, <u>it would be impossible for Malibu to protect its</u>

5

<u>copyright against internet infringers</u>. Furthermore, the Putative Defendants do not contest Malibu's argument that "the *only* way to enforce one's copyrights against online infringement is to subpoena the identity of the subscriber whose internet [connection] was used to commit the infringement." Even if, as the Putative Defendants contend, someone else used their internet connections to copy and distribute Malibu's films, <u>the identity of IP address holders is relevant to Malibu's claims: it can provide a useful starting point for identifying the actual infringer</u>. Thus, the Court finds that <u>the relevance of the IP address holders' identity outweighs the burden of its subpoena</u>.

*Id.* (Citations omitted.)

Even if the subscriber is not the infringer, Rule 26 of the Federal Rules of Civil Procedure provides for broad discovery. Rule 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067, at *6 (E.D. Pa. 2012) (holding that although the subpoena may only identify the subscriber and may not reveal the infringer's identity, the subpoenas are a proper use of discovery.). *See also e.g. Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383 at *9 (E.D. Pa. 2012) (denying motion to quash subpoena in similar BitTorrent copyright infringement case holding that the relevancy standard was satisfied); *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 at *5 (N.D. Ill. 2013) (same); *Malibu Media, LLC v. John Does No. 1-30*, 2012 WL 6203697 at *4 (D.N.J. 2012) (same). "Relevance is a broad concept at the discovery phase . . . The identity of the customers associated with the Alleged IP addresses is relevant under this standard . . . The subpoenas to the ISP, therefore, are a proper use of discovery." *Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 at *4 (C.D. Ill. 2012).

### C. Defendant Has a Minimal Expectation of Privacy in the Subpoenaed Information

Defendant also argues that this Court should quash the subpoena based upon his/her expectation of privacy in the subpoenaed information. This argument has been repeatedly rejected in cases of on-line copyright infringement. "[T]here is no expectation of privacy in

6

Internet subscriber information because it has already been exposed to a third party, the Internet Service Provider. Additionally, an individual has no protected privacy interest in their name, address, phone number, e-mail address, or Media Access Control address when there is an allegation of copyright infringement." *First Time Videos, LLC v. Does 1-18*, 2011 WL 4079177 at *1 (S.D. Ind. 2011) *citing Courtright v. Madigan,* 2009 WL 3713654 at *2 (S.D.Ill. 2009) and *Interscope Records v. Does 1–12,* 2008 WL 4939105 at *2 (N.D.Ind. 2008). *See also Hard Drive Prods. v. Does 1-48*, 2012 WL 2196038, (N.D. Ill. 2012) (*citing First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 249 (N.D. Ill. 2011) ("To the extent that the [defendant] is asserting [a] . . . privacy interest in not having his identity revealed, courts have recognized that because internet subscribers must convey their identity and other information to an ISP in order to establish an account, they do 'not have a reasonable expectation of privacy in their subscriber information.'"); *Malibu Media LLC v. John Does 1-7*, 2013 WL 501445 at *1 (C.D. Ill. 2013) (same).

### D. The Only Two Circuit Courts to Rule on the Issue Have Approved the Use of Rule 45 Subpoenas to Identify Anonymous On-line Infringers

Both the Second and Eighth Circuits, the only circuits to rule on the issue, have approved the use of Rule 45 subpoenas in on-line infringement cases to identify anonymous Doe Defendants. In *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) the Second Circuit upheld the District Court's denial of a motion to quash after Arista obtained leave "to serve a subpoena on defendants' common ISP, the State University of New York at Albany." By so holding, the Second Circuit approved the process of issuing a Rule 45 subpoena to an ISP to identify anonymous Doe Defendants. Similarly, the Eight Circuit held "organizations such as the RIAA can file a John Doe suit, along with a motion for third-party discovery of the identity

7

of the otherwise anonymous 'John Doe' defendant." *In re Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, FN3 (8th Cir. 2005).

### E. Plaintiff Does Not Oppose Motions to Proceed Anonymously

Malibu Media has informed its counsel to never oppose a defendant's motion to proceed anonymously. This is because Plaintiff has no intent to cause undue embarrassment or hardship to any putative Defendant. Accordingly, Plaintiff does not object to filing Defendant's identifying information under seal and allowing him/her to remain anonymous through the end of discovery, so long as Plaintiff is not prevented from conducting discovery in an orderly and efficient manner. Indeed, "it is within the discretion of the district court to grant [the defendant] the 'rare dispensation' of anonymity against the world (*but not the plaintiff*)." *Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768 at *5 (N.D. Ill. 2012) (emphasis added) (*citing United States v. Microsoft Corp.,* 56 F.3d 1448, 1464 (D.C.Cir.1995)).

Although the potential for embarrassment is sufficient to warrant the right to proceed anonymously in this case, it does not "outweigh the statutory right of [Plaintiff] to protect its property interest in its copyright." *Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 at *5 (C.D. Ill. 2012). *See also Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7(N.D. Ill. 2013) ("It would be unfair to deprive owners of copyrights to pornographic material the same protections as owners of other copyrighted work."); *Malibu Media, LLC v. John Does 1-22*, 2013 WL 24526 at *4 (D. Colo. 2013) (denying motion to quash noting, "[e]qually outside [the scope of Rule 45] is a party's concern that being named as defendant in a federal lawsuit may injure his or her reputation . . . [the Court] is ultimately bound by Rule 45 and must only quash a subpoena on the bases cited therein."). Plaintiff must obtain the subpoena response in order for this case to proceed.

8

## V. PLAINTIFF'S EXHIBIT C IS PROPER

Defendant argues that Exhibit C to Plaintiff's Complaint is attached for the "obvious purpose . . . to pressure this Doe Defendant, if identified by the ISP, into settling to avoid public humiliation." Defendant's Motion, p. 4. Defendant's assertion is false. First, as stated above, Plaintiff does not object to defendants' requests to remain anonymous in order to prevent the potential for undue embarrassment. Next, Exhibit C has never been used by any of Plaintiff's counsel, including undersigned, to assert improper leverage to coerce settlement. In fact, Plaintiff's current policy is to <u>*not*</u> contact Doe Defendants regarding settlements.[1] That policy has been in effect for *every* suit against an individual infringer that Malibu Media has filed. Accordingly, no phone calls or letters have ever been sent to doe defendants soliciting a settlement in an individual suit. It has also been Malibu Media's policy, absent compelling exculpatory evidence, to serve every defendant sued in an individual case. In short, while Malibu Media is not averse to resolving a dispute early in the process, Malibu Media intends to litigate and win its individual cases.

Courts throughout the country have expressly found that Plaintiff does not engage in improper litigation tactics. Most recently and notably, after concluding trial with Plaintiff, the Honorable Judge Baylson found Malibu Media did not use "unscrupulous tactics and false accusations to collect millions of dollars from innocent and injured computer users." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025 (E.D. Pa. June 18, 2013). Similarly, the Honorable Judge Hegarty of the District of Colorado stated: "the Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a

---

[1] This is a pre-service policy. During the lawsuit, Rule 26(f) requires the parties to discuss settlement. And, if necessary or appropriate, Plaintiff may first raise the issue of settling a matter during an active litigation.

9

Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. 2013).

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "Furthermore, Doe 5 has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 12 C 08903, 2013 WL 2150679 (N.D. Ill. May 17, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).[2]

Plaintiff and its counsel habitually use Exhibit C for (a) determining the identity of the infringer; (b) allowing an unserved doe defendant the ability to provide Plaintiff with the identity of the actual infringer; (c) proving that defendant is a BitTorrent user; (d) proving that the infringer resides in defendant's home; (e) proving that defendant had knowledge of BitTorrent use; (f) impeaching defendant; (g) determining if a defendant wiped his hard drive or destroyed evidence; and (h) proving that Plaintiff's claims are plausible. All of these reasons are proper.

Plaintiff's Exhibit C has received extensive judicial scrutiny and has been found to be proper. In the Eastern District of Pennsylvania Judge Baylson scrutinized Plaintiff's Exhibit C

---

[2] The only judges that have ever severely criticized Plaintiff's litigation did so *sua sponte* without giving Malibu Media the opportunity to explain its actions.

when a defendant raised similar concerns to those of the Honorable Judge Crocker in Wisconsin. *See Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 (E.D. Pa. 2013). Ruling on the *exact issue* Defendant has raised, the Honorable Judge Baylson held "[a]fter consideration, the Court finds no need to strike Paragraph 53 or Exhibit F[1] of the Amended Complaint in 12–2088 or to issue sanctions. Malibu has included this material in order to show *a pattern or practice of infringement* by Doe 13. It is not suing upon these infringements; *it is making an allegation which may become evidence to support its claim to relief*." *Id.* at *11 (emphasis added).

Judge Baylson expressly found that using Exhibit C as an exhibit to a complaint is proper. In addition to Judge Baylson, Plaintiff has received 415 separate orders granting it leave to subpoena a defendant's ISP in an individual suit that contained Exhibit C. These orders span 14 (fourteen) separate districts, including nearly every district court in the Seventh Circuit. Further, Plaintiff's counsel in Florida recently attended two hearings before separate judges where the Exhibit C was carefully scrutinized and at no point did either judge ever suggest its use was not proper.

As to Defendant's argument that Exhibit C has no evidentiary purpose, Defendant is again incorrect. Defendant's Motion, p. 4. The evidence on Exhibit C may be admissible under Fed. R. Evid. 404(b). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "A party faces a significant obstacle in arguing that evidence should be barred because it is not relevant, given that the Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant." *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012).

---

[1] In this case Plaintiff's Exhibit C happened to be filed as "Exhibit F".

11

Even though "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character", it may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "[T]he rule does not preclude the use of other incidents when the issue is the likelihood that the person will engage in certain conduct in the future." § 5239 Other Crimes, Wrongs, or Acts—General Rule, 22A Fed. Prac. & Proc. Evid. § 5239 (2d ed.).

Consistent with courts throughout the country, the Seventh Circuit has held that a defendant's interests in photos, books, movies and television constitutes probative evidence other than to prove character. In *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001), the Seventh Circuit found that Defendant's movie and pictures collection, some of which depicted violent or otherwise controversial pornography, was probative evidence because it demonstrated Defendant's obsession which led to his crime.

> <u>The fact that Dressler maintained a collection of videos and pictures depicting intentional violence is probative of the State's claim that he had an obsession with that subject</u>. A person obsessed with violence is more likely to commit murder, and therefore the videos and photographs are relevant. Similarly, a person who possesses photographs of homosexual acts coupled with depictions of extreme violence might be more inclined to commit a crime exhibiting the characteristics of homosexual overkill.

*Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001) (internal citations omitted) (emphasis added). Just as where a person who is obsessed with violence is more likely to commit murder, a person who uses BitTorrent every day to steal content from other intellectual property holders is more likely to steal Plaintiff's content through BitTorrent.

Other courts throughout the country have admitted evidence of defendant's hobbies and interests to demonstrate knowledge, method, plan, and lack of accident. *See, e.g., People v.*

12

*Corbett*, 611 P.2d 965, 966 (Colo. 1980) (admission of defendant's knowledge in martial arts probative to show physical accomplishments); *State v. Taylor*, 2001-1638 (La. 1/14/03), 838 So. 2d 729, 746 (Defendant's interest in the movie Natural Born Killers was admissible); *State v. Hayward*, 327 Or. 397, 407, 963 P.2d 667, 674 (1998) (defendant's interest in death metal admissible to show intent).

> This circuit has developed a four-part test to determine whether evidence of prior acts is admissible: (1) the evidence must be directed toward establishing something at issue other than a party's propensity to commit the act charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence must be such that the jury could find that the act occurred and the party in question committed it; and (4) the prejudicial effect of the evidence must not substantially outweigh its probative value.

*Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 775-76 (7th Cir. 2001). "We do not require that there be no prejudicial effect, only that the prejudice not be unfair." *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495 (7th Cir. 1998).

In this case, Plaintiff's expanded surveillance is not used as evidence to demonstrate propensity, but instead used to identify the Defendant, demonstrate that Defendant had knowledge of the infringement and the absence of any mistake. Additionally Plaintiff's expanded surveillance is evidence used to impeach defenses and denials. The acts on Exhibit C took place simultaneously with the infringement of Plaintiff's movies, and often are ongoing. The infringements took place using the same IP address, enabling a jury to conclude that the acts occurred and were committed by the same person. Any prejudice Defendant might face is substantially outweighed by probative value. The ongoing and continuous nature of the infringement on Exhibit C also shows a likelihood of future conduct by the same infringer, which is relevant because Plaintiff's requested relief includes that the Defendant be permanently enjoined from infringing Plaintiff's works.

Plaintiff's Exhibit C evidence is also admissible to establish Defendant's identity. "Since identity, like intent, is usually an ultimate issue in the case, there is no need to look beyond the inference to identity in determining the relevance of other crimes, wrongs, or acts offered under this exception." § 5246 Other Crimes, Wrongs, or Acts—Identity, 22A Fed. Prac. & Proc. Evid. § 5246 (2d ed.). Courts have found evidence relevant to prove identity in a variety of situations. *See e.g. United States v. DeLuna*, 763 F.2d 897, 916 (8th Cir. 1985) (Evidence that defendant had been in prison was admissible where the only way to identify voices on tape was through nicknames corresponding to prison log of defendant's visitors.); *United States v. Phillips*, 664 F.2d 971, 1029 (5th Cir. 1981) (Evidence that defendant had a false driver's license was admissible to prove identity); *United States v. Juarez*, 561 F.2d 65, 74 (7th Cir. 1977) (evidence of sale of heroin used to prove identity). Here, all of the different pieces of evidence on Exhibit C either will or may be used to identify a defendant.

In *Mathias v. Accor Econ. Lodging, Inc.,* 01 C 6329, 2002 WL 1611582 (N.D. Ill. July 22, 2002), the Northern District of Illinois held a motel's long standing pattern of bug infestations was relevant in a claim for emotional distress arising from insect infestation to show knowledge and mental state. Specifically, the court found:

> All four prongs of Rule 404(b) are met as the evidence sought to be excluded (1) establishes the defendants' knowledge of a dangerous condition and absence of mistake or accident, (2) is evidence primarily from the months immediately prior to Mathiases' arrival, (3) shows that defendants repeatedly placed invitees in infested rooms and that it shows the defendants committed the same act towards the Mathiases, and (4) the probative value is not outweighed by the danger of unfair prejudice.

*Mathias v. Accor Econ. Lodging, Inc.,* 01 C 6329, 2002 WL 1611582 (N.D. Ill. July 22, 2002).

Likewise, here, Plaintiff's Exhibit C is relevant to prove both knowledge and absence of mistake. Just like in *Mathias*, the evidence begins at around the same time as the infringement,

14

and shows that the infringer repeatedly downloaded content on BitTorrent. Further, it shows that Defendant committed the same act with Plaintiff's movies. This is evidence of Defendant's intent, knowledge and ability, and the probative value of much if not all of it outweighs the danger of unfair prejudice. However, if the Court finds some of the content on the expanded surveillance causes unfair prejudice, the Court may provide a limiting instruction or omit those references.

Adjudging the admissibility of the evidence contained on Exhibit C prior to facts being developed during discovery which demonstrate the relevance of the evidence would be premature and unfair to Plaintiff. Indeed, Plaintiff's Due Process rights would be violated if it were not given the opportunity, after the close of discovery, to argue that any particular piece of evidence on Exhibit C is admissible under the test set forth in *Mathias* and other applicable law.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the subject Motion.

Dated: July 12, 2013

>Respectfully submitted,
>
>SCHULZ LAW, P.C.
>
>By:    /s/ *Mary K. Schulz*
>        Mary K. Schulz, Esq.
>        1144 E. State Street, Suite A260
>        Geneva, Il 60134
>        Tel: (224) 535-9510
>        Fax: (224) 535-9501
>        Email: schulzlaw@me.com
>        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 12, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

      By:    <u>/s/ *Mary K. Schulz*</u>