UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**MALIBU MEDIA, LLC,**

        Plaintiff,

    **-vs-**                                                     **Case No. 13-C-536**

**JOHN DOE, subscriber assigned
IP address 184.58.186.212,**

        Defendant.

**MALIBU MEDIA, LLC,**

        Plaintiff,

    **-vs-**                                                     **Case No. 13-C-544**

**JOHN DOE, subscriber assigned
IP address 97.83.171.176**

        Defendant.

**MALIBU MEDIA, LLC,**

        Plaintiff,

    **-vs-**                                                     **Case No. 13-C-779**

**JOHN DOE, subscriber assigned
IP address 174.103.170.15**7

        Defendant.

## DECISION AND ORDER

In these and many other cases filed in federal courts all over the country, Malibu Media is suing individuals for illegally downloading their copyrighted adult films. The pattern that emerged, both here and elsewhere, is that Malibu Media would sue an anonymous defendant associated with an Internet Protocol address and then attach an exhibit to its complaint listing a large number of downloaded titles that do not correspond to the copyrights-in-suit. *See* Complaints, Exhibit C. Some of these titles are crude, obscene, and pornographic, much more so than the works copyrighted by Malibu Media, a purveyor of "sophisticated erotica."[1] Thus, an initially anonymous defendant, who may or may not be guilty of infringing Malibu Media's copyrights, would likely feel pressured to enter a quick settlement to avoid having his or her name associated with a particularly embarrassing list of pornographic films. Following the lead of Judge Crocker and Judge Conley in the Western District of Wisconsin, the Court issued an order directing Malibu Media to show cause as to why it should not be sanctioned for attaching this exhibit to its complaints. *Malibu Media, LLC v. Doe*, 2013 WL 5276081 (E.D. Wis. Sept. 17, 2013); *see also Malibu Media LLC v. Doe*, 2013 WL 4821911 (W.D. Wis. Sept. 10, 2013) (Judge Conley's Order imposing sanctions). Just like in the Western District cases, the Electronic Frontier Foundation ("EFF"), a non-profit digital rights group, filed an amicus brief in support of sanctions. Malibu Media has responded to the Court's order to show cause and also to the

---

[1] *Compare,* "A Girls Fantasy" with "Cute innocent Japanese girl . . . helpless body" (Case No. 13-C-536); "Red Satin" with "18XGirls . . . Takes On Two . . ." (Case No. 13-C-544); and "First Love" with "....Amber.VS.Nikki.Sexx. . . . Challenge.ImmoralLive" (Case No. 13-C-779).

arguments presented by EFF.

The Court is considering sanctions under Federal Rule of Civil Procedure 11(b)(1), which provides that by "presenting to the court a pleading . . . an attorney . . . certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Some courts have noted that Rule 11 has an objective component and a subjective component. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). Under this line of reasoning, the objective inquiry asks whether the pleading was filed after reasonable investigation into the law and the facts, and the subjective inquiry asks whether the pleading was filed for an improper purpose. *In re Collins*, 250 B.R. 645, 661 (Bankr. N.D. Ill. 2000) (citing *Szabo*, *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263 (7th Cir. 1993), and *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1988), among other cases). At the same time, there are "a few Seventh Circuit cases that place an 'objective' label on the test to determine whether a paper was interposed for an improper purpose." *Id.* (citing *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994); *Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft*, 855 F.2d 385, 393 (7th Cir. 1988)).

It strikes the Court as counterintuitive to use an objective standard under Rule 11(b)(1), since "the test of whether a paper was interposed for an improper purpose

- 3 -

focuses on the reasons or motives for the filing." *In re Collins* at 662. However, what the case law seems to suggest is that the circumstances surrounding an objectionable filing can be used to evaluate whether the filing was motivated by an improper purpose. *See, e.g., Nat'l Ass'n of Gov't Emp., Inc. v. Nat'l Fed'n of Fed. Emp.*, 844 F.2d 216, 224 (5th Cir. 1988) ("A court must focus on objectively ascertainable circumstances that support an inference that a filing harassed the defendant or caused unnecessary delay"); *Sussman v. Bank of Israel*, 56 F.3d 450, 458 (2d Cir. 1995) (the court "is not to delve into the attorney's subjective intent" in filing the paper, but rather should assess objective factors such as "whether the papers or proceedings caused delay that was unnecessary, whether they caused increase in the cost of litigation that was needless, or whether they lacked any apparent legitimate purpose"). In other words, a court must "focus on the objectively ascertainable circumstances and not on the subjective intent of the filing party." *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996) (citing *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 538 (5th Cir. 1990)); *see also Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 840 (N.D. Ind. 1995) ("where there is no direct evidence of subjective intent the courts have applied the objective test and have inferred improper purpose when a certified document (1) is meritless, and (2) results in delay, harassment, a needless increase in costs, or some other illegitimate result"). This is perhaps a more roundabout way of framing the issue like Judge Conley framed it: "even if this court is unable to conclude definitively that the attorney *subjectively* thought that he or she was engaging in

- 4 -

harassment, sanctions may be warranted where an objectively reasonable attorney should know that: (1) there is no real need to take a given litigation action; *and* (2) the action would substantially harass or embarrass the opposing party." 2013 WL 4821911, at *4 (citing *Harlyn*, 9 F.3d at 1270) (emphases in original); *see also Sheets*, 891 F.2d at 538 (if a "reasonably clear legal justification can be shown for the filing of the paper in question, no improper purpose can be found and sanctions are inappropriate").

As before Judge Conley, Malibu Media vigorously defends its decision to attach Exhibit C to its complaints, explicitly disclaiming any sort of ill motive or intent. In a lengthy memorandum, Malibu Media explains that it hired a company called IPP International to expand the universe of .torrent files that are scanned as part of Malibu Media's pre-suit investigation. The result is Exhibit C, which is used as a cross-reference tool to help paint a picture of the alleged infringer. By comparing publicly-available information about the subscriber with the information in the cross-reference tool, Malibu Media asserts that is able to confirm or deny that the subscriber is the actual infringer. For example, if Malibu Media learns that the subscriber is a fan of the Chicago White Sox who enjoys fly fishing, and the cross-reference tool shows that four White Sox games and a how-to manual for fly fishing were downloaded using the subscriber's IP address, Malibu Media can use this information to prove that the subscriber was the individual who infringed its copyrights.

As an initial matter, the actual relevance of this information is highly

- 5 -

questionable.  An IP address identifies, at most, an internet subscription that can be used by multiple people.  Accordingly, it does not necessarily follow that the individual associated with certain unique characteristics – i.e., the White Sox fan/fly fishing enthusiast – is the individual who downloaded Malibu Media's films. Moreover, Malibu Media is a purveyor of "sophisticated erotica which is appealing to men, women, and couples,"[2] so hardcore pornography downloads are minimally probative of the actual infringer's identity.  Fed. R. Evid. 404(b)(1), (2) ("other acts" evidence "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose, such as proving . . . identity . . .").

Even if Exhibit C is somehow relevant or useful in this game of "whodunit," there is no legitimate justification for Malibu Media to attach the exhibit to its complaints in the first instance.  In the mine run of cases, Malibu Media tracks the infringing activity to a specific IP address.  Malibu Media then files a complaint along with a motion to serve a third-party subpoena on the anonymous defendant's Internet Service Provider.  At this point, Malibu Media has stated a plausible claim for relief. A plaintiff doesn't need to anticipate or overcome substantive defenses in its pleadings.  At the pleading stage at least, the exhibit is completely unnecessary.  Judge Conley's Order, 2013 WL 4821911, at *3 ("Malibu Media concedes that in all of the cases it has filed it 'has never had a case dismissed pursuant to Fed. R. Civ. P.

---

[2] Response to the Order to Show Case, Ex. E, Declaration of Colette Field, ¶ 4.

12(b)(6)' with or without the attachment of an exhibit of this kind"). Malibu Media's assertion that it was simply trying to bolster the strength of its case does not pass scrutiny since it could have achieved the same result by filing Exhibit C under seal, redacting the most scandalous titles therefrom, or "pleading that it has a much more comprehensive list of materials and, if a defendant refuses to acquiesce or assist, providing the actual list to him or her directly and confidentially." *Id.* at *2.

With regard to "assistance," Malibu Media argues that in its experience, the infringer is almost always the subscriber, but if the *Doe* defendant is innocent, then he or she will usually know the actual infringer. To this end, the complaint attaches a form labeled "Exculpatory Evidence Request"[3] which can be used in conjunction with Exhibit C to help identify the infringing party. This is simply an additional form of coercion. The subscriber might attempt to shift blame to someone else, but the subscriber would still feel substantial pressure to accept the blame, especially if the actual infringer is a family member or other close relation. Either way, the choice between outing yourself or one of your relatives as an alleged connoisseur of extreme pornography isn't a very appealing scenario. Moreover, if the subscriber argues that a neighbor or other third-party gained access through a hacked or unsecured WI-FI connection, the subscriber still must consider the possibility that Malibu Media will

---

[3] This form includes the following entries: "1. List all authorized users (including household members) of any IP Address assigned to the Defendant; . . . 5. What is the distance from the Defendant's residence to the closest neighbor? _____ Yards; . . . 9. Has the Defendant and/or Authorized Users as listed in #1 above ever visited a streaming media site containing unauthorized copies of Plaintiff's works?" Case No. 13-C-536, ECF No. 1-4.

forge ahead with its complaint in any event.

Finally, the entirety of Malibu Media's litigation conduct strongly suggests that Exhibit C was filed for an improper purpose. According to a PACER search, Malibu Media has filed over a thousand cases thus far in 2013.[4] The Court doubts that Malibu Media has the resources to fully litigate even a fraction of this amount of cases. Malibu Media has the legal right to enforce its copyrights, but the sheer number of lawsuits corroborates the Court's belief that Exhibit C was being filed to coerce quick and early settlements. Malibu Media explains that at the beginning of 2013, it stopped suing people in joined suits and began to sue defendants on an individual basis. Malibu Media portrays this as a voluntary decision to focus on "persistent on-line infringers," but in reality, Malibu Media was forced to pursue individual defendants because courts began rejecting its attempts to prosecute "same-swarm joined"[5] cases against multiple defendants. *See, e.g.*, *Malibu Media, LLC v. John Does 1-23*, 878 F. Supp. 2d 628 (E.D. Va. 2012); *Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339 (M.D. Fla. 2013). As one court observed, by "requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement – making this type of litigation less

---

[4] On December 12, 2013, a search for "All Court Types Party Search Name malibu media filed on or after 01/01/2013 All Courts" showed 1,115 records found.

[5] "BitTorrent works by breaking files into many smaller files 'to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), [and] allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers)." *In re BitTorrent Adult Film Copyright Infringement Cases*, --- F.R.D. ---, 2012 WL 1570765, at *2 (E.D.N.Y. July 24, 2012).

- 8 -

Case 2:13-cv-00536-RTR  Filed 12/12/13  Page 8 of 11  Document 34

profitable.  If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it." *Malibu Media, LLC v. John Does 1 through 10*, 2012 WL 5382304, at *4 (C.D. Cal. June 27, 2012); *see also In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 at *13 ("In the four cases before this Court, plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory").  Thus, the widespread use of Exhibit C can be viewed as a concerted attempt to recoup some of the efficiency that was lost when courts started rejecting Malibu Media's attempts to pursue multi-defendant lawsuits.  Whatever the reason, these types of cases are already infected with the potential for abuse, and Malibu Media doubled-down by threatening to publicly associate infringers with extreme pornographic works having no relevance to its own copyrights.  Malibu Media and its counsel should not be allowed to abuse the legal system in this manner without being called to account for it.

As a last resort, Malibu Media argues that neither it nor its counsel should be sanctioned because it has taken corrective action by moving to seal Exhibit C in previously-filed cases, and also because it has instructed counsel nationwide to never file Exhibit C with a complaint again.  Given that there is no "safe harbor" provision when a Court acts on its own initiative under Rule 11(c)(3), "corrective action . . . should be taken into account in deciding what – if any – sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred."  Fed. R. Civ. P. 11 Advisory Committee Notes (1993).  However, the Court

also considers whether "the improper conduct . . . was part of a pattern of activity" or whether "the person has engaged in similar conduct in other litigation." Obviously, the use of Exhibit C is (or was) part of an overall pattern of abusive litigation practices. Malibu Media is a sophisticated litigant, so it should not be allowed to avoid sanctions simply by adapting its tactics after being questioned by multiple federal judges. Moreover, the ultimate goal of Rule 11 sanctions is deterrence. Fed. R. Civ. P. 11(c)(4). The sanction imposed by Judge Conley achieved a measure of deterrence; further sanctions are warranted as a way of supplementing and reinforcing the initial deterrent effect. Accordingly, the sanction here will be the same as before Judge Conley: $200 per case, for a total of $600.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. EFF's motions for leave to file a brief *amicus curiae* in support of sanctions [ECF No. 26 in Case No. 13-C-536, ECF No. 20 in Case No. 13-C-544, and ECF No. 14 in Case No. 13-C-779] are **GRANTED**;

2. Malibu Media's motions to seal Exhibit C to the complaints [ECF No. 19 in Case No. 13-C-536, ECF No. 14 in Case No. 13-C-544, and ECF No. 9 in Case No. 13-C-779] are **DENIED** as moot;

3. Malibu Media's motions for leave to file its response to the Court's Order to show cause under seal [ECF No. 22 in Case No. 13-C-536, ECF No. 18 in Case No. 13-C-544, and ECF No. 12 in Case No. 13-C-779] are **GRANTED**; and

4. Counsel for Malibu Media is sanctioned $200 in each of the above-captioned cases for a total of $600, to be paid to the Clerk of Court.

Dated at Milwaukee, Wisconsin, this 12th day of December, 2013.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**